# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
**No. 23-0133V**

| | |
|---|---|
| JOHN LACONTE,<br><br>Petitioner,<br>v.<br><br>SECRETARY OF HEALTH AND HUMAN SERVICES,<br><br>Respondent. | Chief Special Master Corcoran<br><br>Filed: October 26, 2026 |

*Mark Theodore Sadaka, Law Offices of Sadaka Associates, LLC, Englewood, NJ, for Petitioner.*

*Alyssa M. Petroff, U.S. Department of Justice, Washington, DC, for Respondent.*

## DECISION DISMISSING PETITION[1]

On January 31, 2023, John LaConte filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. § 300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that he suffered vaccine-induced right deltoid myositis and tendonitis that was either caused-in-fact or, in the alternative, significantly aggravated by an influenza ("flu") vaccine received on September 5, 2020. Petition at 1.

[1] Because this Decision contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Decision will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

Respondent argues that Petitioner cannot meet the statutory severity requirement, and the matter is now fully briefed (ECF Nos. 39, 42, 43). For the reasons set forth below, I find that Respondent's objection is meritorious, and therefore the case is dismissed.

## I. Factual History

### A. Medical Records

Petitioner received a flu vaccine in his right deltoid on September 5, 2020. Ex. 4 at 2-3. Less than a month later (September 28, 2020), he called his primary care provider ("PCP") complaining of "pain in his *left* upper arm after the flu shot that he received 3 weeks and 2 days ago." Ex. 6 at 26 (emphasis added). His symptoms persisted, although they had improved in the weeks since vaccination. *Id*. He was advised to use over-the-counter medications and follow up if the pain did not resolve. *Id*.

On October 6, 2020, Petitioner saw a neurologist and now complained of "right arm pain post flu shot." Ex. 2 at 1. The pain had "started right away" after vaccination, he reported, and persisted "for the past 1 month since he received the flu shot." *Id*. He explained that his range of motion ("ROM") was now restricted due to pain, which made it difficult to lift things. *Id*. On examination, Petitioner's right shoulder abduction was "normal but [Petitioner] expresses severe discomfort." *Id*. at 2. He was assessed with right deltoid myositis and tendonitis "post Flu Shot." *Id*. The neurologist prescribed oral steroids and recommended that Petitioner attend physical therapy ("PT") if steroids did not help within a week. *Id*.

Petitioner returned to the neurologist on November 24, 2020, stating that his right arm pain persisted after oral steroids and topical medication. Ex. 2 at 3. Anti-inflammatory medication helped, but his pain returned when the medication wore off. *Id*. He had not attended PT. *Id*. His examination results were the same as before: his right shoulder abduction was again noted as "normal but [Petitioner] expresses severe discomfort." *Id*. at 4. Petitioner was provided with referrals for PT and orthopedic consultations, but he has not provided records of any treatment for his shoulder after this appointment, which occurred two and a half months after the alleged onset of his condition.

On October 1, 2021 – nearly one year later - Petitioner consulted his PCP via telehealth for medication refills for unrelated conditions. Ex. 6 at 28. The record of this appointment states that he denied decreased ROM or other symptoms. *Id*. On November 1, 2021, Petitioner had a telehealth appointment with his PCP to discuss lab results pertaining to unrelated conditions. *Id*. at 30. Almost a year after that, on September 6, 2022, Petitioner saw his PCP via telehealth for unrelated matters. *Id*. at 24. The records of these appointments do not mention complaints of shoulder-related symptoms.

### B. Testimonial Evidence

Petitioner filed a declaration in support of his claim. Ex. 7. He explains that he works in the shipping and receiving department of a warehouse, and that his job involves a lot of lifting and carrying heavy packages. *Id*. at ¶ 3. He explains that his pain began immediately after vaccination, and in the following days he struggled at work because he "was not able to lift the packages." *Id*. at ¶ 6.

By November 2020, Petitioner's arm symptoms had worsened, and he could no longer lift his arm over his head or put on a shirt without pain. Ex. 7 at ¶ 11. When he returned to the neurologist that month, he states the doctor told him he would need "additional screening to further examine what was happening to my arm," but that his insurance would not cover it. *Id*. at ¶ 12. Therefore, he referred Petitioner to PT and an orthopedist. *Id*.

Petitioner states that he was "not able to follow up on the referrals from the neurologist because I did not have the money." Ex. 7 at ¶ 13. After seeing the neurologist twice, he began receiving bills he could not afford, and decided not to see any other providers. *Id*. Over time, he has "learned to deal with the pain and adjust my everyday activities" to avoid pain. *Id*. at ¶ 14. He adds that his arm still hurts when he showers (as of September 7, 2023, when he signed his declaration). *Id*.

## II. The Parties' Arguments

Respondent argues that Petitioner has not satisfied the statutory severity requirement, and thus moves to dismiss the Petition. Rule 4(c) Report, filed Aug. 7, 2025, at *4-5 (ECF No. 38) ("Rule 4 Report"), and Motion to Dismiss, filed Aug. 7, 2025 (ECF No. 39). Respondent asserts that, assuming that the onset of Petitioner's condition occurred on the date of vaccination (which Respondent contends is unclear on the current record), Petitioner would need to establish residual effects beyond March 5, 2021 – but has not done so. Rule 4 Report at *4.

Respondent observes that Petitioner called his PCP and attended two neurologist appointments between September and November 2020, and thereafter did not seek any further treatment for his alleged injury. Rule 4 Report at *4. Although Petitioner's declaration asserts that his symptoms persisted through September 2023, Respondent observes that this contention is not supported by medical records, medical opinion, or other evidence. *Id*. at *5. Petitioner continued to seek care from his PCP in 2021 and 2022, but did not report, or seek care for, any shoulder symptoms during this time. *Id*. at *4-5. And the Vaccine Act precludes a special master from finding that a claimant meets the burden of proof based solely on the claims of a petitioner. *Id*.

Petitioner opposes dismissal, but alternatively requested leave to supplement the record within 30 days. Petitioner's Opposition, filed Nov. 20, 2025, at *1-5 (ECF No. 42) ("Opp."). Petitioner contends that he continues to suffer from his injury, and maintains that this is supported by the November 24, 2020 neurologist record. Opp. At *3. He states that he was "unable to pursue additional treatment due to a lack of insurance." *Id*. at *4. At the time of his last treatment in November 2020, he had completed a course of oral steroids, and his physician recommended PT and an orthopedic evaluation – which Petitioner maintains supports his statement in his declaration (almost *three years* later) that he continues to suffer residual effects of his injury. *Id*. He argues that he should not be "punished" for lack of insurance or funds to follow up. *Id*. at *3.

Petitioner asserts he has a "viable path" to satisfy the severity requirement. Opp. at *3-4. He states that he intends to file a medical expert report affirming the persistence of injury. *Id*. And Petitioner's failure to satisfy the *Althen* standard is a "curable procedural defect," rather than a basis for dismissal. *Id*. He adds that an expert report "is currently in preparation" (notwithstanding the fact that the parties were instructed not to retain experts without first consulting me and each other, which did not occur). *Id*.; SPU Initial Order, filed Jan. 26, 2024, at *1 (ECF No. 20).

On reply, Respondent emphasizes that Petitioner treated his injury for two months, and never sought further care thereafter. Respondent's Reply, filed Dec. 3, 2025, at *2 (ECF No. 43) ("Reply"). Thus, this is not a case where a claimant temporarily stopped seeking treatment and then returned for care, reporting ongoing symptoms. *Id*. And it is not a case where the claimant's last treatment was close to the six-month mark and an inference could be made that Petitioner had not fully recovered by that time. *Id*.

Respondent asserts that Petitioner relies too heavily on his testimonial evidence, observing that it was prepared during litigation – almost nine months after the Petition was filed – and three years after vaccination. Reply at *3. Petitioner's declaration is the *only* evidence that Petitioner experienced residual effects for more than six months, and as a "retrospective, litigation oriented statement," it should be given little weight. *Id*. at *3-4. Respondent adds that allowing Petitioner another 30 days to supplement the record is unlikely to overcome any deficits, observing that Petitioner has previously been afforded multiple opportunities to supplement the record while the case has been pending. *Id*. at *4.

## III. Legal Standards

Before compensation can be awarded under the Vaccine Act, a petitioner must preponderantly demonstrate all matters required under Section 11(c)(1), including the factual circumstances surrounding his or her claim. Section 13(a)(1)(A). In making this determination, the special master or court should consider the record as a whole. Section

13(a)(1). Petitioner's allegations must be supported by medical records or by medical opinion. *Id.*

To resolve factual issues, the special master must weigh the evidence presented, which may include contemporaneous medical records and testimony. *See Burns v. Sec'y of Health & Human Servs.,* 3 F.3d 415, 417 (Fed. Cir. 1993) (explaining that a special master must decide what weight to give evidence including oral testimony and contemporaneous medical records). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Human Servs*., 993 F.2d 1525, 1528 (Fed. Cir. 1993).

To overcome the presumptive accuracy of medical records, a petitioner may present testimony which is "consistent, clear, cogent, and compelling." *Sanchez v. Sec'y of Health & Human Servs.,* No. 11–685V, 2013 WL 1880825, at *3 (Fed. Cl. Spec. Mstr. Apr. 10, 2013) (citing *Blutstein v. Sec'y of Health & Human Servs.,* No. 90–2808V, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998)). The Federal Circuit has "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Human Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021) (explaining that a patient may not report every ailment, or a physician may enter information incorrectly or not record everything he or she observes).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id*.

In addition to requirements concerning the vaccination received and the lack of other award or settlement,[3] a petitioner must establish that he or she suffered an injury meeting the Table criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination he or she received. Section 11(c)(1)(C). The Vaccine

[3] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception and has not filed a civil suit or collected an award or settlement for his or her injury. Section 11(c)(1)(A)(B)(E).

Act further includes a “severity requirement,” pursuant to which a petitioner must demonstrate that they:

> (i) suffered the residual effects or complications of such illness, disability, injury, or condition for more than 6 months after the administration of the vaccine, or (ii) died from the administration of the vaccine, or (iii) suffered such illness, disability, injury or condition from the vaccine which resulted in inpatient hospitalization and surgical intervention.

Section 11(c)(1)(D).

“[T]he fact that a Petitioner has been discharged from medical care does not necessarily indicate that there are no remaining or residual effects from her alleged injury.” *Morine v. Sec’y of Health & Human Servs.*, No. 17-1013, 2019 WL 978825, at *4 (Fed. Cl. Spec. Mstr. Jan. 23, 2019); *see also Herren v. Sec’y of Health & Human Servs.*, No. 13-1000V, 2014 WL 3889070, at *3 (Fed. Cl. Spec. Mstr. July 18, 2014) (“a discharge from medical care does not necessarily indicate there are no residual effects”). “A treatment gap . . . does not automatically mean severity cannot be established.” *Law v. Sec’y of Health & Human Servs*., No. 21-0699V, 2023 WL 2641502, at *5 (Fed. Cl. Spec. Mstr. Feb. 23, 2023) (finding severity requirement met where Petitioner sought care for under three months and had met physical therapy goals but still lacked full range of motion and experienced difficulty with certain activities, then returned to care nearly five months later reporting stiffness and continuing restrictions in motion); *see also Peeples v. Sec’y of Health & Human Servs.*, No. 20-0634V, 2022 WL 2387749 (Fed. Cl. Spec. Mstr. May 26, 2022) (finding severity requirement met where Petitioner sought care for four months, followed by fifteen month gap); *Silvestri v. Sec’y of Health & Human Servs*., No. 19-1045V, 2021 WL 4205313 (Fed. Cl. Spec. Mstr. Aug. 16, 2021) (finding severity requirement satisfied where Petitioner did not seek additional treatment after the five month mark).

In order to prevail on a causation in fact claim, Petitioner must establish the *Althen* factors. *See Althen v. Sec’y of Health & Human Servs.*, 418 F.3d 1274, 1278 (Fed. Cir. 2005) (setting out a three part test for causation in fact claims, requiring that a petitioner establish (1) a medical theory causally connecting the vaccination and the injury; (2) a logical sequence of cause and effect showing that the vaccination was the reason for the injury; and (3) a showing of a proximate temporal relationship between vaccination and injury).

**Analysis**

A careful review of the record supports the conclusion that Petitioner cannot establish that he more likely than not experienced residual effects of his alleged right shoulder injury for more than six months after onset.

Petitioner sought care for *left* shoulder pain less than a month after vaccination, relating his pain to vaccination. After consulting his PCP, Petitioner saw a neurologist twice, in October and November 2020, now complaining of right shoulder pain. But the final appointment relating to Petitioner's shoulder condition occurred two and a half months after the alleged onset of his symptoms. At that time, Petitioner exhibited normal but painful ROM, and reported pain that he managed with over-the-counter medication. Ex. 2 at 3-4. The record of this visit does not suggest that his symptoms at this time were severe, and his failure to seek treatment for his condition thereafter supports this conclusion.

Although Petitioner was referred for further evaluation in PT and orthopedics, he did not pursue these options. He asserts that his neurologist told him that his "insurance would not cover the additional screenings" needed to examine his condition, without further explanation or supporting evidence. Ex. 7 at ¶ 12. He attributes his decision not to pursue further evaluation to "not hav[ing] the money" and "bills that [he] could not afford," also without further explanation or supporting evidence. Ex. 7 at ¶ 13.

An unsupported assertion of financial limitations cannot, on its own, substantiate a finding that the claimant continued to experience residual effects of an injury. In this case, financial considerations are only one of many possible explanations for Petitioner's failure to seek further treatment, and the record does not support a finding that finances are the more likely explanation. This is particularly true in light of the fact that at three appointments in 2021 and 2022, Petitioner did not seek treatment for his shoulder – despite his contention in his declaration that his symptoms persisted beyond that point. Ex. 7 at ¶ 14 (stating in September 2023 that his arm still hurts when he showers). And Petitioner's assertion that his November 2020 neurologist record supports a finding that his condition persisted *five years later* (Opp. at *3) is unsound. The overall record suggests that the more likely explanation for Petitioner's failure to seek additional treatment is that his condition simply did not require follow-up care.

Petitioner's alternative request for additional time to supplement the record is not appropriate, given the posture of this case as well as the numerous opportunities Petitioner was given to do so throughout the course of this case, which has been pending for nearly *four years*. The case remained in "pre-assignment review" for a year while Petitioner gathered required documents – which, per § 11(c)(1) of the Vaccine Act, are required to be filed *with* the Petition. While Petitioner gathered some records during this time, they did not include evidence supporting the severity requirement.

On February 28, 2024, I issued an order noting the lack of evidence that the statutory severity requirement was satisfied, and allowing Petitioner nearly two months to file such evidence. Scheduling Order, issued Feb. 28, 2024 (ECF No. 22). Thereafter, Petitioner sought, and received, numerous extensions of time to file such evidence (ECF Nos. 23-28).

Following a status conference to discuss the matter, Petitioner was allowed additional time to file additional evidence. Scheduling Order, issued. Feb. 4, 2025 (ECF No. 30). Petitioner again sought, and received, extensions of time to file such evidence (ECF Nos. 32, 33, 35, 36), and did not do so.

When Respondent filed his Rule 4 Report and Motion to Dismiss, Petitioner was given two months to respond to the motion *and to file additional evidence*. Scheduling Order (NON-PDF), filed Aug. 7, 2025. Petitioner ultimately responded to the motion to dismiss in November 2025, but again did not file additional evidence.

In light of the excessive amount of time Petitioner has already been provided to file additional evidence without doing so, including with the specific issue of the statutory severity requirement highlighted as needing further support, I find that allowing Petitioner even *more* time to supplement the record is unlikely to result in such evidence being produced. Therefore, Petitioner's alternative request is denied.

## Conclusion

**Petitioner has failed to establish that the statutory severity requirement is satisfied. Accordingly, Respondent's motion to dismiss is GRANTED and this case is DISMISSED for insufficient evidence. The Clerk of Court shall enter judgment accordingly.**[4]

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master

[4] Pursuant to Vaccine Rule 11(a), entry of judgment can be expedited by the parties' joint filing of notice renouncing the right to seek review.